

# United States Bankruptcy Court
## for the District of Oregon

**Thomas M. Renn, Judge**
Virginia H. Denney, Judicial Assistant
Howard J. Newman, Law Clerk

405 East Eighth Avenue, Suite 2600
Eugene, Oregon 97401

(541) 431-4050
FAX: (541) 431-4047

January 28, 2015

Mr. Michael R. Fuller
Olsen Daines, PC
US Bancorp Tower
111 SW 5th Ave., 31st Floor
Portland, OR 97204

Mr. Bryan K. Dodd
1682 Iron Horse Road
Eugene, OR 97402

RE:   KIMBERLY BUEHLER v BRYAN K. DODD
      Adversary Proceeding No. 14-6008-tmr

Dear Messrs. Fuller and Dodd:

As you are aware, Plaintiff's cause of action was tried on October 22, 2014, after which I solicited post-trial briefing. The matter is now ripe. After carefully considering the evidence and arguments, this letter is intended to announce my decision.

Facts:

Defendant owns residential property on Quaker St., in Eugene (**the property**). Plaintiff as tenant, and Defendant as landlord, entered into a rental agreement. The rent became past due. At some point on or before December 24, 2013, Defendant initiated a proceeding in Lane County Circuit Court to evict Plaintiff (**FED action**). The initial hearing (**FED hearing**) was set for December 31, 2013, at 8:30 a.m.

Plaintiff had two children living with her and did not want to be evicted. She did internet research and concluded that a bankruptcy filing would stay the FED action. On December 30, at 4:09 p.m., she filed a Chapter 7 petition pro se. On that same day, Plaintiff left a voice-mail with Defendant with her bankruptcy case number, sent a similar text message, and left a copy of her bankruptcy petition in Defendant's screen door. Defendant received notice of the bankruptcy that day by one or more of these communications. Further, in the late afternoon of the 30th, Plaintiff filed a copy of her bankruptcy petition in the FED action, which she testified was a

certified copy. Nevertheless, the FED hearing took place the next day as scheduled. Plaintiff did not appear, choosing instead to go to work. Defendant did appear. According to Defendant, the automatic stay was not discussed, although no transcript of the hearing has been introduced into evidence. A judgment requiring Plaintiff to vacate the property (**restitution judgment**) was entered the same day, and a "**notice of restitution**" was generated by the Circuit Court Administrator listing January 6, 2014, at 11:59 p.m. as the "move-out" deadline, after which Plaintiff would be subject to forced eviction by the Sheriff.

On January 1, 2014, Defendant was mailed notice of the bankruptcy filing by the Bankruptcy Noticing Center. The notice contained a warning the automatic stay prohibited certain actions, including, "continuing lawsuits." It is not known when Defendant received the notice, but his Answer indicates it was "sometime later that week." Answer at ¶ 5.

At some point on or before January 3, the notice of restitution was posted on Plaintiff's door. On January 3, a Friday, Plaintiff called the Chapter 7 Trustee to advise her of the restitution judgment and seek advice on how to proceed. The Trustee referred her to her present attorney, Mr. Fuller, who met with her the same day. Mr. Fuller immediately wrote Defendant a letter advising him of the automatic stay, and asking that he vacate the restitution judgment. Plaintiff placed the letter in Defendant's screen door that evening.

On January 6, Plaintiff spoke to Defendant and requested that he vacate the restitution judgment. Defendant said he wanted to speak with Mr. Fuller. That same day, Mr. Fuller spoke to Defendant by phone. Again, he asked Defendant to vacate the restitution judgment and advised him to get an attorney. At some point in the conversation, Defendant told Mr. Fuller, "all she had to do is pay the damn rent," or similar words. That same day, Mr. Fuller advised Plaintiff to remove essential personal belongings from the property, which Plaintiff did by driving them to a friend's house.

The next day, January 7, Defendant retained an attorney, Ms Jordan, who explained to him the effect of the stay. Defendant told Ms Jordan to do whatever was necessary to correct the violation. Also on January 7, Plaintiff filed in the bankruptcy main case, a motion to declare the restitution judgment void. The next day, Defendant filed a motion in Circuit Court to vacate the restitution judgment. He also responded to Plaintiff's motion, advising of the Circuit Court motion. Ms Jordan and Mr. Fuller then had phone and e-mail exchanges. Ms Jordan told him she preferred a Circuit Court order, rather than a stipulated Bankruptcy Court order, as she did not feel comfortable signing an order that essentially substituted her opinion for that of the Circuit Court, particularly when she did not attend the FED hearing, and did not know what evidence or legal basis the Circuit Court relied upon in issuing the restitution judgment. On January 9, Plaintiff filed a reply to Defendant's response, advising that the moment the restitution judgment was vacated, she would withdraw her motion to have it declared void.

On January 10, the Circuit Court vacated the restitution judgment, whereupon Plaintiff withdrew her motion.

Discussion:

This is an action seeking to recover compensatory damages[1] under 11 U.S.C. § 362(k)(1),[2] which provides in relevant part:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

A threshold issue is whether Defendant violated the automatic stay. Section 362(a)(1) prohibits "the . . . continuation . . . of a judicial . . . action or proceeding against the debtor that was . . . commenced before the commencement of the case." The continuation of the FED action, including the FED hearing, entry of the restitution judgment, and service of the notice of restitution, violated this subsection. In re Figuera, 2014 WL 4923078, *8 (Bankr. E.D. Cal. July 28, 2014); Acevedo v. SC Real Estate, LLC, __ B.R. __, 2014 WL 4854242, *2 (N.D. Ill. Sept. 30, 2014). The violation continued until Defendant took corrective action. Sternberg v. Johnston, 595 F.3d 937, 944-945 (9th Cir. 2010).[3]

The next question is whether the violation was "willful." Defendant testified that: 1) Plaintiff was his first tenant, 2) he was unfamiliar with bankruptcy, and 3) he had no intent to violate the stay, and that in fact, he had no idea what the automatic stay was. I believe he was a credible witness, and that in fact his subjectively innocent state of mind was reinforced by the Circuit Court going forward with the FED action. However, in this context, the appellate jurisprudence imposes a particularly strict standard on parties once they receive knowledge of the bankruptcy. First, knowledge of the automatic stay is imputed by simple knowledge of the bankruptcy filing. Ramirez v. Fuselier (In re Ramirez), 183 B.R. 583, 589 (9th Cir. BAP 1995). Once a party knows of the stay, all that is required for a "willful" violation is that his action (or, here, inaction), was intentional. Sternberg, 595 F.3d at 945. A subjective belief that one is not in violation is not a defense, id.; Youssef v. Union Adjustment Co., Inc. (In re Youssef), 2011 WL 3298903, *5 (9th Cir. BAP Feb. 1, 2011), even when that belief is based upon reliance on a state court's determination. Gonzalez v. Gervais (In re Gonzalez), 2007 WL 7532280, *3 (9th Cir.

---

[1] Plaintiff originally sought punitive damages, as well as declaratory relief. Those claims were withdrawn at trial.

[2] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

[3] Plaintiff also argued that continuation of the FED action violated § 362(a)(3) which prohibits acts to "obtain possession of property of the estate." In light of my conclusion that subsection (a)(1) was violated by the same activity, I need not address this allegation. Plaintiff further argues that Defendant's "damn rent" statement violated § 362(a)(6), which prohibits "any act to collect . . . or recover" a pre-petition claim against the debtor. I do not construe the statement in that light. Rather, it is best understood as one made out of frustration, in the sense of, "[A]ll she had to do is pay the damn rent [and none of this would be happening]."

BAP March 30, 2007) (citing Williams v. Levi (In re Williams), 323 B.R. 691, 701 (9th Cir. BAP 2005)). Here, even assuming for argument's sake that going forward with the FED hearing was not "willful," as it took place only twelve (12) hours or so after he received notice of the bankruptcy, Sternberg, 595 F.3d 944 (giving creditor's counsel a reasonable time after being surprised by notice of the bankruptcy filing, to take corrective action), Defendant's failure to take corrective measures until January 8, was itself a willful violation. Id. at 944-945.

 Once a willful stay violation has been established, I must ascertain whether Plaintiff has been "injured," that is, whether she has suffered actual damages. Eskanos & Adler, P.C. v. Roman (In re Roman), 283 B.R. 1, 8 (9th Cir. BAP 2002). The stay, however, is a shield, not a sword, and thus like any other damages, an injured party must take reasonable steps to mitigate them. Id. at 12. Defendant argues Plaintiff could have mitigated her damages by simply showing up at the FED hearing and explaining the effect of the bankruptcy to the Circuit Court. Even were that true,[4] I cannot hold Plaintiff's lack of appearance against her. The courts have consistently held that once a creditor or other interested party has notice of the bankruptcy, a debtor has no duty to "reconfirm" the stay is in effect, and/or take additional steps to stop proceedings subject to the stay. Rather, the onus is on the creditor. Id.; Youssef, 2011 WL 3298903 at *5. Cf., Rediger Inv. Corp. v. H Granados Commnc'ns, Inc. (In re H Granados Commnc'ns, Inc.), 503 B.R. 726, 736-737 (9th Cir. BAP 2013)(same duty in contempt/§ 105 context).

 Plaintiff seeks $20,000 in emotional distress damages,[5] which are recoverable for willful stay violations. Dawson v. Wash. Mut. Bank. F.A. (In re Dawson), 390 F.3d 1139, 1148 (9th Cir. 2004). To recover damages for emotional distress, an individual must: (1) suffer significant harm, (2) clearly establish such harm, and (3) demonstrate a causal connection between the significant harm and the violation of the automatic stay. Id. at 1149. One need not suffer pecuniary loss. Id. Significant harm can be established in several ways, including corroborating medical evidence and testimony by non-experts, such as family members, friends, or coworkers. Id. Even without corroborative evidence, significant emotional distress may, in appropriate circumstances, be established if a creditor engages in egregious conduct, or even absent such conduct, the circumstances make it obvious that a reasonable person would suffer significant emotional harm. Id. at 1150.

 Plaintiff adduced no corroborating evidence of emotional distress. Further, she conceded Defendant's conduct was not egregious. Rather, she relies on the circumstances herein as making it "obvious that a reasonable person would suffer significant emotional harm." Id. Upon receipt of the notice of restitution, Plaintiff feared that she and her two children would be evicted.

---

 [4]The uncontroverted evidence is that a copy of the bankruptcy petition was already in the Circuit Court file.

 [5]Defendant queries why Plaintiff has not sought damages from the Circuit Court judge who entered the restitution judgment. While the answer is irrelevant for purposes of Defendant's liability, I can only presume at least one reason is that the judge would likely have a "judicial immunity" defense. See Curry v. Castillo (In re Castillo), 297 F.3d 940, 947 (9th Cir. 2002) (discussing judicial immunity doctrine).

She testified she was crying uncontrollably when she called the Trustee on January 3. She further testified she couldn't sleep the night of the 6th, and was afraid to go to work on the 7th for fear her children would be taken during the eviction process. She testified that in general, she lost sleep and didn't eat well during this time. I find the circumstances here would cause a reasonable person significant emotional distress, and that Plaintiff in fact has proved such distress.

However, while not trivial or fleeting, neither was Plaintiff's distress long-lasting. At the latest, her fear of eviction should have abated by January 8, when Defendant filed his motion to vacate in Circuit Court. In fact, her distress should have stopped sooner. Presumably, her counsel advised her that eviction on the 7th was unlikely considering Defendant had retained counsel, and considering the mechanics of eviction in Oregon.[6] In light of all the facts and circumstances, I find that an award of $1,000 in emotional distress damages is appropriate.

Plaintiff also requests an award of $3,858 in attorney fees and costs. Fees and costs incurred to stop the complained-of stay violation are awardable, as "actual [compensatory] damages." Sternberg, 595 F.3d at 947-948. In contrast, those incurred in pursuit of a damages award, are not awardable. Id. As a corollary to the duty to mitigate, only "reasonable" fees are recoverable. Roman, 283 B.R. at 12. In making that determination, I must looks to two factors, "(1) what expenses or costs resulted from the violation and (2) what portion of those costs was reasonable," id., using § 330's standards as a guide. Id. at 11. The primary method of computing fees is to calculate the lodestar, by multiplying the number of hours reasonably expended by a reasonable hourly rate. In re Dube, 2013 WL 1743849, *6 (Bankr. C.D. Cal. April 23, 2013).

I have carefully reviewed Mr. Fuller's itemized time-sheet, which also includes de minimis entries for two other attorneys in his firm, i.e., Michael Sperry (.2 hrs.) and Eric Olsen (.4 hrs.). I will allow as reasonable all time until Mr. Fuller received notice that Defendant was moving to vacate the restitution judgment,[7] and disallow all except .3 hours thereafter. Grant of the motion to vacate would correct the stay violation. Upon notice of its filing, a reasonable attorney would have stopped working, and waited to see how the motion resolved. The additional .3 hours is a reasonable time to confirm the motion's filing and subsequent grant, and communicate same to the Plaintiff. The total compensable attorney time is, thus, 10.3 hours (9.7 for Mr. Fuller, .2 for Mr. Sperry, and .4 for Mr. Olsen).

As to a reasonable hourly rate, Messrs. Fuller and Sperry each billed at $300 per hour, and Mr. Olsen billed at $345 per hour. Plaintiff presented no expert testimony or other

---

[6] Oregon law requires a landlord, once the "move-out" date on a notice of restitution passes, to obtain a writ of execution from the Circuit Court Clerk, which the Sheriff then serves and enforces. ORS 105.151(1)(b); ORS 105.159(2); ORS 105.161(1).

[7] Defendant had two reasonable options to correct the violation. Copeland v. Kandi (In re Copeland), 441 B.R. 352, 360 (Bankr. W.D. Wa. 2010) (a party must take reasonable steps to remedy a stay violation). He could stipulate to a judgment vacating the restitution judgment in Bankruptcy Court, or move to vacate it in Circuit Court. Although the former may have been more economical, I do not fault Defendant for choosing the latter.

supporting evidence as to the reasonableness of these rates. Rather, she adduced Mr. Fuller's Curriculum Vitae showing his education, legal memberships, licenses, publications, etc., as well as his testimony, which revealed he'd been awarded fees ranging from $190 to $325 per hour in similar cases. He did not, however, give any specific citations to these cases, or describe in any detail, the services rendered therein. While it is axiomatic that some hourly rate is appropriate, and while I take notice of Mr. Fuller's experience in like matters, I nevertheless have very little evidence upon which to base a reasonable rate finding in the case at bar. Thus, I must err on the low side of the argued range, and award Plaintiff's counsel a $190/hour rate, which when multiplied by 10.3 hours equals $1,957 in recoverable attorney fees.

Conclusion:

Defendant's failure to take corrective action to set aside the restitution judgment until January 8 was a willful violation of the automatic stay imposed by § 362(a)(1). As a result thereof, Plaintiff suffered emotional distress damages of $1,000, and reasonable attorney fees of $1,957, entitling her to judgment for $2,957. Plaintiff shall also have judgment for her reasonable costs and disbursements incurred herein.[8] Within fourteen (14) days of this letter's entry, and after circulation to Defendant, Mr. Fuller should prepare and upload a form of judgment.[9]

The above are my findings of fact and conclusions of law pursuant to FRBP 7052. They shall not be separately stated.

Very truly yours,

*[signature]*

THOMAS M. RENN
Bankruptcy Judge

TMR:vhd

---

[8]Plaintiff's costs and disbursements will be awarded in supplemental proceedings pursuant to FRBP 7054 and LBR 9021-1(d).

[9]During the course of these proceedings, I received evidence that Plaintiff resided on the property until sometime in April 2014, yet did not pay any post-petition rent. The amount of unpaid rent could conceivably be offset against the judgment herein. Should the parties wish to resolve this issue, they may include any offset in the tendered judgment. Otherwise, Defendant is free to bring proceedings in another forum to liquidate any post-petition rent claim to judgment. I take no position on the merits of such claim.